NOT DESIGNATED FOR PUBLICATION

**STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT**

**22-402**

**KJ'S SERVICES, INC. and LANDMARK WINDOW & DOOR, LLC**

**VERSUS**

**CASEY LANE JOHNSON, CREATIVE ARCHITECTURAL, LLC and CREATIVE DOOR & WINDOW, LLC**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2020-2516
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Candyce G. Perret, Jonathan W. Perry, and Charles G. Fitzgerald, Judges.

**JUDGMENT AFFIRMED;
MOTION TO FILE LATE REPLY BRIEF DENIED;
MOTION TO STRIKE REPLY BRIEF MOOT;
REQUEST FOR SANCTIONS DENIED.**

**Stephen C. Carleton**
**J. Jacob Chapman**
**Carleton Shoenfelt & Chapman, LLC**
**400 Convention Street, Suite 550**
**Baton Rouge, LA   70802**
**(225) 282-0602**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **KJ'S Services, Inc., D/B/A/ Landmark Window & Door**

**Billy E. Loftin, Jr.**
**Loftin & LeBlanc, L.L.C.**
**410 E. College Street, Suite A**
**Lake Charles, LA   70605**
**(337) 310-4300**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Creative Architectural, L.L.C.**
     **Creative Door & Window, L.L.C.**

**Christopher J. Guillory**
**Post Office Box 13195**
**Lake Charles, LA   70612**
**(337) 855-2130**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Casey L. Johnson**

**PERRET, Judge.**

This appeal stems from an employment dispute between plaintiff, KJ's Services, Inc., d/b/a Landmark Window and Door ("Plaintiff"), and defendants, Casey Lane Johnson ("Mr. Johnson"), Creative Door & Window, L.L.C. ("Creative Door"), and Creative Architectural, L.L.C. ("Creative Architectural") (collectively, "Defendants"). After a hearing, the trial court granted summary judgment in favor of Defendants, dismissing Plaintiff's claims and causes of action with prejudice. For the following reasons, we affirm the trial court judgment. Additionally, upon consideration of the motions, we deny Plaintiff's motion to file a late reply brief, we find Defendants' joint motion to strike reply brief moot, and we deny Defendants' request for sanctions.

## FACTS AND PROCEDURAL HISTORY

In March 2015, Plaintiff and Mr. Johnson entered into a signed agreement entitled "Confidential Information, Trade Secrets, and Covenant Not to Compete" (hereinafter "the Agreement"). Thereafter, Mr. Johnson, who had previous experience in the residential door and window industry, began working as a salesman for Plaintiff from March 9, 2015, until November 22, 2019. Plaintiff alleges that Mr. Johnson was terminated after it "learned from others in the community that Johnson was leaving to join their competitor, (Creative Door/Creative Architectural) in violation of the terms of his non-competition agreement." On November 25, 2019, Mr. Johnson became employed by Creative Door and shortly thereafter, became a member of Creative Architectural.

On June 29, 2020, Plaintiff filed suit against Defendants alleging that Mr. Johnson has violated, and continues to violate, the March 2015 agreement "by accepting employment and/or an independent contractor position with Creative

Door, a direct competitor of his former employer, and/or by creating a new business, Creative Architectural, to directly compete with his former employer." Plaintiff also alleges that Defendants violated the Louisiana Uniform Trade Secrets Act ("LUTSA"), La.R.S. 51:1431, and the Louisiana Uniform Trade Practice Act ("LUTPA"), La.R.S. 51:1401, when they "participated in the direct solicitation of various projects involving customers of KJ's Landmark business using confidential and proprietary information, including but not limited to the use of confidential customer lists, special pricing lists, marketing strategies, and list of works in progress." Plaintiff seeks damages against Mr. Johnson for breach of contract and against all Defendants for tortious interference with business relations, misappropriation of trade secrets pursuant to La.R.S. 51:1431, usurpation of corporate opportunities, unjust enrichment, and unfair trade practices pursuant to La.R.S. 51:1401. Following Hurricanes Laura and Delta, Plaintiff amended its suit in December 2020 to convert all claims against Defendants to claims for monetary damages.

On July 6, 2021, Mr. Johnson filed a motion for summary judgment, with twenty-one exhibits, alleging the following:

(1) The non-compete provisions of the "Confidential Information, Trade Secrets and Covenant Not to Compete" attached to Plaintiffs' Petition as Exhibit "A" are invalid pursuant to La.R.S. 23:921 and applicable jurisprudence interpreting same;

(2) The "Confidential Information, Trade Secrets and Covenant Not to Compete" attached to Plaintiffs' Petition as Exhibit "A" is only as to KJ's Services, Inc., and thus is inapplicable to business of Landmark Window and Door, L.L.C.[;]

(3) KJ's Services, Inc., and/or Landmark Window and Door, L.L.C., has/have not carried on a like business in the residential door and window industry, particularly the higher end residential door and window industry, since November 22, 2019;

2

(4) Casey Johnson's knowledge of the residential door and window industry, especially the higher end of that industry, was not confidential or proprietary to KJ's Services, Inc., or Landmark Window and Door, L.L.C.;

(5) Certain information in relation to projects identified by KJ's Services, Inc., and Landmark Window and Door, L.L.C., in their Petition, such as house plans or measurements, was not confidential or proprietary to KJ's Services, Inc., or Landmark Window and Door, L.L.C.;

(6) Certain information that was voluntarily provided to Casey Johnson independently of KJ's Services, Inc., and Landmark Window and Door, L.L.C., by third parties who voluntarily chose to continue to do business with Casey Johnson after he left employment of KJ's Services, Inc., and/or Landmark Window and Door, L.L.C., was not confidential or proprietary to KJ's Services, Inc., or Landmark Window and Door, L.L.C.;

(7) Casey Johnson did not violate the Louisiana Unfair Trade Practices Act and Consumer Protection Law;

(8) Casey Johnson did not violate the Louisiana Uniform Trade Secrets Act;

(9) Casey Johnson owed no fiduciary duty to KJ's Services, Inc., or Landmark Window and Door, L.L.C., or alternatively, did not breach any fiduciary duty to KJ's Services, Inc., or Landmark Window and Door, L.L.C.;

(10) Casey Johnson did not breach any duty of loyalty to KJ's Services, Inc., or Landmark Window and Door, L.L.C.;

(11) Casey Johnson did not tortiously interfere with any business relationship of KJ's Services, Inc., or Landmark Window and Door, L.L.C.;

(12) Casey Johnson did not engage in any intentional civil conspiracy against KJ's Services, Inc., or Landmark Window and Door, L.L.C.; and

(13) Casey Johnson is entitled to recovery from KJ's Services, Inc., and Landmark Window and Door, L.L.C., of all attorney fees and court costs he has incurred in defending this case.

3

On that same date, Defendants Creative Door and Creative Architectural filed a motion for summary judgment with exhibits and also adopted and joined in Mr. Johnson's motion for summary judgment in its entirety.

On July 22, 2021, Plaintiff filed a motion to dismiss Defendants' motions for summary judgment asserting that it had received the motion and all exhibits via email, but was not served with same by a sheriff's deputy within the requisite time period pursuant to La.Code Civ.P. art. 966(B)(1), and that the motions should be dismissed. Shortly thereafter, Defendants dismissed their motions for summary judgment without prejudice.

On September 30, 2021, Mr. Johnson re-filed his motion for summary judgment, which included the same twenty-one exhibits and arguments that were made in his first motion for summary judgment filed on July 6, 2021. On October 1, 2021, Creative Architectural and Creative Door also re-filed its motion for summary judgment with exhibits and, again, adopted and joined in Mr. Johnson's second motion for summary judgment in its entirety. A hearing on the motions for summary judgment was scheduled for November 8, 2021.

On October 22, 2021, Plaintiff e-filed an opposition to Defendants' motions for summary judgment with the trial court. Plaintiff also emailed Defendants the opposition; however, the opposition received by Defendants was not signed and was not an exact match to the memorandum filed in the trial court. Additionally, Plaintiff did not serve Defendants with the exhibits refenced in its memorandum in opposition to summary judgment.

On November 2, 2021, Defendants filed a reply to Plaintiff's opposition to the summary judgment arguing that Plaintiff failed to serve them with a signed opposition and that Plaintiff's exhibits referenced in the opposition have never been

4

served on them. Accordingly, Defendants allege Plaintiff failed to properly serve its opposition on them and that their motions for summary judgment are thus unopposed.

On November 4, 2021, Plaintiff filed a sur-reply in opposition to Defendants' motions for summary judgment arguing that its opposition "was timely filed and served on all parties and the exhibits were timely filed and, with the exception of a single affidavit, already in Defendants' possession." Plaintiff argues "[t]he copy that [Defendants] received via email was a PDF and was identical to the one sent to [the trial court], apart from the fact that the latter had an electronic signature." With respect to the supporting exhibits, Plaintiff argues that "all of the exhibits, with the exception of the Affidavit of James Nabours were already in Defendants' possession and were clearly identified in the body of the Opposition Memorandum." Plaintiff also argues that "a copy of the [James Nabours] affidavit was provided to Defendants after they raised this concern in their Reply Memorandum." Further, Plaintiff alleges that there was "an unexpected internet outage [that] occurred in Lafayette, Baton Rouge, and several surrounding areas" on Friday, October 22, the day the opposition was emailed to Defendants. Plaintiff argues that "[a]s a result of the internet outage, [its] office was unable to use its printer (which is connected via its internet network), fax machine, or internet (for online filing)." In the alternative, Plaintiff requested for the trial court to grant a short continuance of the hearing.

On November 8, 2021, a hearing was held on the motions for summary judgment. On December 20, 2021, the trial court rendered a signed judgment ruling as follows: (1) the Plaintiff's opposition and exhibits were untimely and inadmissible; (2) Defendants' motions for summary judgment would be treated as unopposed; (3) Plaintiff's sur-reply and exhibits were in violation of La.Code Civ.P.

art. 966 and thus not considered for purposes of ruling on the motions for summary judgment; (4) Plaintiff's motion to continue hearing was denied; and (5) granted Defendants' motions for summary judgment in full, except as to Defendants' request for attorney fees.

Plaintiff now appeals this judgment, alleging the following four assignments of error:

> 1. The Trial Court erroneously refused to consider Appellant's timely filed Opposition to Appellees' Motions for Summary Judgment.
>
> 2. The Trial Court committed legal error by finding contrary to the controlling jurisprudence of the Court of Appeal, that the contract entered between Appellant and Johnson was unenforceable as a matter of law.
>
> 3. The Trial Court committed factual and legal errors by granting a summary judgment as to Appellees on Appellant's claims of violations of LUTPA, LUTSA, breach of fiduciary duties, breach of loyalty, tortious interference with a business relationship, and civil conspiracy, without considering the disputed facts raised by Appellant in its Opposition.
>
> 4. The Trial Court committed legal error by failing to grant the Motion for Partial Summary Judgment filed by Appellant.

## STANDARD OF REVIEW

An appellate court reviews a trial court's granting of a motion for summary judgment de novo. *Duncan v. U.S.A.A. Ins. Co.*, 06-363 (La. 11/29/06), 950 So.2d 544. Under this standard of review, the appellate court uses the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

A motion for summary judgment shall be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." La.Code

6

Civ.P. art. 966(A)(3). "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La.Code Civ.P. art. 966(A)(4).

Louisiana Code of Civil Procedure Article 966(D)(1) discusses the mover's burden of proof on summary judgments, and states:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

## MOTIONS

Before addressing the merits of this appeal, we will address three preliminary matters: (1) a motion for leave of court to file a late reply brief; (2) a motion to strike the reply brief; and (3) a request for sanctions. According to the Uniform Rules—Courts of Appeal, Rule 2-12.6, "[t]he appellant may file a reply brief, if he has timely filed an original brief, but it shall be strictly confined to rebuttal of points urged in the appellee's brief. No further briefs may be filed except by leave of court." Uniform Rules—Courts of Appeal, Rule 2-12.7 states, "[t]he reply brief, if any, of the appellant shall be filed not later than 10 calendar days after the appellee's brief is filed."

In this case, Plaintiff filed a reply brief with this court on September 23, 2022; however, the reply brief is untimely because it was filed more than ten calendar days

after the appellees' brief was filed on September 2, 2022. Thereafter, Plaintiff filed a motion for leave of court to file a reply brief.

On September 28, 2022, Defendants filed a joint motion to strike reply brief and for sanctions. On October 11, 2022, Plaintiff filed an opposition to Defendants' joint motion to strike and for sanctions. After considering the Uniform Rules of Courts of Appeal, we hereby deny Plaintiff's motion for leave of court to file a late reply brief and, consequently, find the joint motion to strike Plaintiff's reply brief moot. Additionally, we deny Defendants' request for sanctions.

**DISCUSSION**

The issue presented for our consideration on appeal is whether the trial court erred in granting Defendants' motions for summary judgment upon finding that: (1) the noncompetition agreement between the parties was not enforceable; and (2) there were no genuine issues of fact as to Plaintiff's claims of LUTPA, LUTSA, breach of fiduciary duty, duty of loyalty, tortious interference with a business relationship and civil conspiracy.

In *SWAT 24 Shreveport Bossier, Inc. v. Bond*, 00-1695, p. 4 (La. 6/29/01), 808 So.2d 294, 298, the supreme court addressed noncompetition agreements and explained that "Louisiana has long had a strong public policy disfavoring noncompetition agreements between employers and employees." The court stated that "Louisiana's strong public policy restricting these types of agreements is based upon an underlying state desire to prevent an individual from contractually depriving himself of the ability to support himself and consequently becoming a public burden." *Id.* Thus, "[b]ecause such covenants are in derogation of the common right, they must be strictly construed against the party seeking their enforcement." *Id.* The court then provided the following legal principles:

The starting point for the interpretation of any statute is the language of the statute itself. *Cat's Meow, Inc. v. City of New Orleans,* 98-0601, p. 15 (La.10/20/98), 720 So.2d 1186, 1198; *Touchard v. Williams,* 617 So.2d 885 (La.1993). The language of La. R.S. 23:921 [titled "Restraint of business prohibited; restraint on forum prohibited; competing business; contracts against engaging in; provisions for"] at issue provides that every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind shall be null and void except that any person who is employed as an employee may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer within a specified parish so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

*Id.* at 302.

In this case, the Agreement provides the following relevant clauses (underlining added for emphasis):

## Confidential Treatment for Trade Secrets.

**Section 1: Confidential Treatment for Trade Secrets:** Employee hereby agrees that, during the Term of Employment and after termination of his employment with Employer, he will not, without the written consent of Employer, disclose to any person, enterprise, entity or association or otherwise use or exploit for himself or others any of the proprietary or confidential information regarding Employer, its subsidiaries, affiliates, ventures or shareholders (individually the "Company" and collectively the "Companies"), or any of their businesses, properties or affairs obtained by him at any time prior to or subsequent to the execution of this Agreement, except to the extent required by his performance of assigned duties for Employer, including without limitation: trade secrets; processes; inventions; engineering records or data; interpretive or analytical information or data; drilling logs; operating agreements and records; records of research; proposals; manuals; records or information; reports; methods; techniques; lists; memoranda; computer software; programming or records; or budgets or other financial information, regarding the Companies (collectively, "Trade Secrets"). Provided, however; that this Section 1 shall not apply to information or technology which (a) was known to Employee or the public prior to disclosure to Employee in the course of his employment, by Employer hereunder or prior hereto with a predecessor in interest to Employer; (b) becomes generally known to the public through no fault of Employee or others owing duties of trust or confidentiality to Employee, (c) is lawfully obtained by Employee from another source not under obligation to Employer or its affiliates regarding disclosure of such information or technology, or (d) is developed after the Term of Employment and independently by Employee or its sublicensees or

agents without access to or reliance on the information or technology disclosed hereunder.

## Return of Trade Secrets.

**Section 2: Return of Trade Secrets**. Upon termination of his employment with Employer, Employee will deliver to the Companies all tangible displays and repositories of proprietary or confidential information or knowledge, including without limitation: Trade Secrets; and other materials or records or writings of any other type (including any copies thereof) made, used or obtained by Employee in connection with his employment by Employer in interest prior to or subsequent to the execution of this Agreement.  Employee agrees that all inventions, improvements in any of the Companies' methods of conducting their businesses or innovations (in each case, including, by way of expansion and not limitation, policies, procedures, products, improvements, software, ideas and discoveries, whether or not patentable or copyrightable) that fall within the term "Trade Secrets" as defined by the Louisiana Uniform Trade Secrets Act, La. R.S. 51:1431, conceived or made by him during any time of his employment by Employer prior to or subsequent to the execution of this Agreement belong to the appropriate the Company or Companies and to the extent Employee participated in the creation of the Trade Secrets he did so on a work for hire basis.  Upon termination of his Employment with Employer, Employee shall promptly disclose such inventions, improvements or innovations to the Board of Directors and perform all actions reasonably requested by the Board of Directors to establish and confirm such ownership by the Companies and to protect the intellectual property of Employer contained therein or represented thereby.

Employee acknowledges:

> (1) Immunity—An individual shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that—(A) is made—(i) in confidence to a federal, state or local government official, either directly or indirectly, or to an attorney, and (ii) solely for the purpose of reporting or investigating a suspect violation of law; or (B) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

> (2) Use of Trade Secret Information in Anti-Retaliation Lawsuit—An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual—(A) filed any document containing the trade secret under seal; and (B) does not disclose the trade secret, except pursuant to court order.

**Covenant Not to Compete.**

**Section 3: Covenant Not to Compete**. Employee hereby agrees that:

3.1. <u>During the Term of Employment and for one (1) year following the termination or resignation of Employee's employment under this Agreement (the "Non-Compete Period"), Employee will not, in association with or as an officer, principal, member, advisor, agent, partner, director, stockholder, employee or consultant of any corporation (or sub-unit, in the case of a diversified business) or other enterprise, entity or association that competes with the Business of Employer (as defined in Section 3.6. below) in the Territory (as defined in Section 3.3 below)</u>.  The Employee also agrees, in addition to all other covenants contained in this Section 3, that during the Non-Compete Period, Employee will not serve or act as an employee of any corporation, entity, association or other enterprise that competes with the Business of Employer in the Territory.

3.2. During the Term of Employment and during the Non-Compete Period, he will not solicit or induce any person who is or was employed by the Employer at any time during such term or period (A) to interfere with the activities or businesses of the Employer in the Territory or (B) to discontinue his or her employment with the Employer, or employ any such person in a business or enterprise which competes with the Employer in the Territory.  In addition, during the Term of Employment and during the Non-Compete Period, he will not (C) request any customer or supplier of the Employer to curtail or cancel its business with Employer in the Territory, or (D) unless otherwise required by law, disclose to any person, firm or corporation any details of organization or business affairs of the Employer, any names of past or present customers of the Employer or any other non-public information concerning the Employer.

3.3. The covenants contained in Section 3 shall constitute and be deemed to constitute separate and severable covenants in respect of each of the areas collectively comprising the following geographical areas (collectively, the "Territory"), to-wit:

(i) any county within the state of Texas within 25 miles from the Louisiana/Texas border, (ii) the following Parishes of Louisiana: Calcasieu, Cameron, and Beauregaurd and as to all other terms and conditions of the covenants.  The unenforceability of any specific, covenant shall not affect the provisions of any other covenant.  If it is judicially determined that any provision of this Section 3 or any part thereof is unenforceable under applicable law(s) (statute, common law, or otherwise), then it is hereby agreed that the unenforceable portion shall be redrafted to the extent necessary to render it enforceable, while leaving the remaining portions intact.  Employee and the Employer further agree that in the event the said non-competition covenants

should be held by any court or other constituted legal authority to be effective in any particular area or jurisdiction only if said covenant is modified to limit its duration or scope, then the parties hereto shall consider such non-competition covenants to be amended and modified with respect to that particular area or jurisdiction so as to comply with the order of any such court or other constituted legal authority, and, as to all other jurisdictions or political subdivisions thereof, the said non-competition covenant shall remain in full force and effect as originally written. By agreeing to this contractual modification prospectively at this time, the parties intend to make this provision enforceable under the law(s) of all applicable states so that the entire agreement not to compete or to solicit and/or this Agreement as prospectively modified shall remain in full force and effect and shall not be rendered void or illegal. Thus, if for any reason, the Agreement should be found to be unenforceable in one jurisdiction, the separate and severable covenants of Section 3 covering the other jurisdictions will remain in full force and effect. Furthermore, it is the intention of Employer and Employee that Section 3, insofar as its provisions affect the Parishes of Louisiana listed herein be enforceable under La. R.S. 23:921; and the parties agree that, within the Parishes in Louisiana listed herein, the said covenants contained in Section 3 should be interpreted to fully comply with La. R.S. 23:921. As to the portion of the Territory including the State of Texas, Texas law shall govern.

3.4. Employee understands that the provisions of Section 3 hereof may limit his ability to earn a livelihood in a business that violates this Agreement, but as an executive officer of Employer he nevertheless agrees and hereby acknowledges that (i) such provisions do not impose a greater restraint than is necessary to protect the goodwill or other business interests of Employer and the Companies; (ii) such provisions contain reasonable limitations as to time and scope of activity to be restrained; and (iii) the consideration provided hereunder, including without limitation, any amounts or benefits provided hereunder, is sufficient to compensate Employee for the restrictions contained in Section 3 hereof. In consideration of the foregoing and in light of Employee's education, skills and abilities, Employee agrees that he will not assert that, and it should not be considered that, any provisions of Section 3 otherwise are void, voidable or unenforceable or should be voided or held unenforceable.

3.5. In the event the reformation provision contained in Section 3 above is invalid or unenforceable for any reason, Employee and the Employer agree that in the event the foregoing non-competition covenants should be held by any arbitrator court or other constituted legal authority to be void or otherwise unenforceable in any particular area or jurisdiction or for any particular period or with regard to any competitive activity, then the parties hereto shall consider this Agreement to be amended and modified so as to eliminate therefrom that particular area or jurisdiction or period or competitive activity as to which such non-competition

12

covenants are so held to be void or otherwise unenforceable, and, as to all other areas and jurisdictions covered by this Agreement, the terms and provisions hereof shall remain in full force and effect as originally written.

Of note, the covenant not to compete provides the following at section 3.6: "For the purposes of this Section 3, the business of the Employer is described as follows (the "Business")[.]" However, the covenant not to compete is silent with respect to any language describing the business of Plaintiff. Thus, while the Agreement defines the parishes and a one-year time period in which Mr. Johnson should not compete, it fails to define the business of KJ's Services, Inc., which is a necessary factor in a noncompetition agreement under La.R.S. 23:921.[1] Moreover, Plaintiff admitted, on July 2, 2021, that "prior to Casey Johnson's employment with KJ's, that KJ's was not engaged in the residential door and window business." As such, we agree with the trial court that the Agreement does not inform Mr. Johnson of what business he is not to compete against and what activity is prohibited. Again, considering noncompete agreements are disfavored and are to be strictly construed, we find no error in the trial court's ruling that "these non-compete provisions are null and void as they do not comport with [La.R.S. 23:921,]" and that "[t]he Agreement is null and void on its face."

We have carefully reviewed the Louisiana statutory law and jurisprudence and conclude that the trial judge, in his well-written reasons, accurately sets forth the facts of this case and correctly disposes of all of the legal issues presented. Accordingly, we hereby adopt the trial court's excellent reasons for judgment, signed on December 15, 2021, as set forth below (seventh alteration in original):

---

[1] Louisiana Revised Statutes 23:921 is set forth on page 16, *infra*.

## WRITTEN REASONS FOR JUDGMENT

THIS MATTER CAME BEFORE THE COURT ON November 8, 2021 for hearing and oral arguments on Motions for Summary Judgment filed by defendants, Casey Lane Johnson, Creative Architectural, LLC and Creative Door and Window, LLC, (Creative Defendants).
. . . .

The Motions for Summary Judgment are **GRANTED** in favor of the Defendants, Casey Lane Johnson, Creative Architectural, LLC, and Creative Door and Window, LLC.

The request for attorney[] fees and court costs are **DENIED**.

## DEFENDANT'S OBJECTIONS:

Defendants objected to the Plaintiffs' Opposition and Exhibits because they were unsigned and untimely served. The Court sustained the objection. Plaintiffs' Memorandum in Opposition and attached exhibits were ruled inadmissible and thus were not considered. See *La. C.C.P Art. 966(D)(2)*. The Motions for Summary Judgment were heard as unopposed motions.

The hearing was scheduled for November 8, 2021. By rule, any opposition was due fifteen (15) days prior to the hearing on the motion. See *La. C.C.P. Art. 966(B)(2)*. The due date for any opposition was October 25, 2021 (the actual fifteenth day was October 24, 2021, but it being Sunday, a legal holiday, the deadline was extended to the next day which is not a legal holiday).

It is understandable why Plaintiffs would have used October 22, 2021 as their internal deadline since it was the Friday before the actual deadline. On that day, it is undisputed from the facts that Plaintiffs served an unsigned version of the Memorandum in Opposition without exhibits. It is confirmed that a signed version with exhibits was not served until November 4, 2021. This occurred three (3) days prior to the hearing. The chronology is not in dispute. Plaintiffs failed to timely serve a signed version of their Memorandum in Opposition and exhibits in contravention of the statutory requirement.

Plaintiffs argued "good cause" existed for a continuance of the hearing. See *La. C.C.P. Art. 966 (C)(2)*. The Court rejected the "good cause" argument and denied the continuance request. Similar versions of the Motions for Summary Judgment were filed in July 2021. While Plaintiffs had not filed any opposition at that time, Plaintiffs were certainly aware of Defendants intentions. Plaintiffs[] argued technical difficulties prevented the timely filing of the Opposition. The Court rejected this argument because Plaintiffs were able to upload a signed

version of the Opposition and the exhibits to the Clerk of Court yet not send the same copies to the opposing parties. Further, even after apparently realizing the error, Plaintiffs still failed to send the full versions until a mere 3 days before the hearing. The deadlines are critical because they are grounded on notice and a fair opportunity to challenge the opposition arguments on reply. The Reply was due five days before the hearing, yet Defendants were prejudiced in this case because they did not receive the opposition formally and correctly until 3 days prior to the hearing.

It is important to also note that every pleading must be signed by at least one attorney of record. *La. C.C.P. Art. 863*. Any pleading not signed must be stricken from the record unless promptly signed. Here, the Court finds the pleadings were not promptly signed under the circumstances and due to the untimely service issue discussed above.

The Court is mindful of controlling authority on the issue and follows *Doucet v. Superior Gauging Servs.* [*Inc.*, 18-861 (La.App. 3 Cir. 04/17/19), 268 So.3d 1082] (opposition served untimely just thirteen (13) days before the hearing). See also *Miller v. Acadian Ambulance Serv.* [*Inc.*, 17-1096 (La.App. 3 Cir. 05/23/18), 248 So.3d 469, *writ denied*, 18-1452 (La. 11/20/18), 256 So.3d 990] (opposition filed and served 10 days prior to hearing).

The time limitations contained in *La. C.C.P. Art. 966* are mandatory. Considering the parties did not agree to an extension, the court was prevented from granting an extension sua sponte. See *La. C.C.P. Art. 966(B)*.

For these reasons, the Court ruled the Opposition inadmissible and did not consider it. To rule otherwise deprives a party the chance to timely respond to opposition arguments, which ultimately deprives the court of a full understanding of the issues that are paramount to making a decision. Fundamental fairness is inherent in procedural deadlines like those set forth in *La. C.C.P. Art. 966*.

## MOTION FOR SUMMARY JUDGMENT

*La. C.C.P. Art*[.] *966* instructs the Court on the applicable standards:

A. (1) A party may move for a summary judgment for all or part of the relief for which he has prayed. A plaintiff's motion may be filed at any time after the answer has been filed. A defendant's motion may be filed at any time.

(2) The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The

15

procedure is favored and shall be construed to accomplish these ends.

(3) After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law.

(4) The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. The court may permit documents to be filed in any electronically stored format authorized by court rules or approved by the clerk of the court.

. . . .

D. (1) The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the Mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

E. A summary judgment may be rendered dispositive of a particular issue, theory of recovery, cause of action, or defense, in favor of one or more parties, even though the granting of the summary judgment does not dispose of the entire case as to that party or parties.

Casey Lane Johnson was employed as a salesperson for KJ's Services, Inc. and Landmark Window and Door, hereinafter as KJ's, (the distinction between the two were of no import to the court and did not factor into any decision in this matter as the distinction, if any, is immaterial) from March 9, 2015, to November 22, 2019. KJ's was in the residential window and door business. Subsequent to Johnson's termination, he was employed/affiliated with the Creative Defendants.

KJ's sued Johnson and the Creative Defendants for several reasons, stemming primarily from breach of the employment agreement

executed by Johnson and KJ's prior to Johnson's employment with KJ's.

KJ's alleges that Johnson and the Creative Defendants breached the agreement and several provisions within. Additionally, KJ's alleges violation of the LUTSA, LUTPA, breach of fiduciary duty, duty of loyalty, tortious interference with a contract, and civil conspiracy.

Pursuant to *La. C.C.P. Art. 966*, jurisprudential interpretations of employment agreements and the impressive testimony from various affiants, the Court granted the Summary Judgment in favor of Defendants, finding no genuine issue of material fact that:

1) The agreement is null and void and against public policy;

2) Casey Lane Johnson was the window and door business of KJ's and that any expertise, knowledge, skill, or information he took with him was confined within him from his experience and skill as a door and window salesperson;

3) Vendors and clients voluntarily chose to do business with Casey Lane Johnson as a separate institutional figure in the business;

4) Casey Lane Johnson did not steal or use any secrets or information from KJ's following his employment termination;

5) No egregious actions or malice are proven;

6) There was no breach of any duty by Casey Lane Johnson that he may have had toward KJ's;

7) Any loss of business or clients by KJ's as alleged was due to inaction or actions of KJ's and not through any actions or activities of Casey Lane Johnson; and

8) KJ's voluntarily chose not to continue in the door and window business after its termination of Casey Lane Johnson.

These findings were not a result of weighing testimony or judging credibility. This was an unopposed motion so any evidence to the contrary was not considered. It is important to note the uncontested facts were proven and not challenged.

The main considerations for the Court were whether Casey Lane Johnson violated the agreement and whether his actions/activities after termination in some way harmed intentionally KJ's. The Court answered both in the negative.

KJ's has the burden of proof at trial. In order to succeed on Summary Judgment, all the Defendants had to do is successfully prove any one of the many elements could not be proven by KJ's. KJ's cannot prove the agreement was valid. Thus, KJ's cannot succeed on any breach claims.

["][N]on-competition agreements are highly disfavored in our State, save for the specific exception for salesmen owning a proprietary or equity interest in a car dealership.["] *Navarre Chevrolet, Inc. v. Begnaud*, [16-465, p. 4 (La.App. 3 Cir. 11/2/16), 205 So.3d 973, 976, *writ denied*, 16-2122 (La.1/13/17), 215 So.3d 248.] ["]Louisiana strongly disfavors non-competition agreements.["] *H&E Equipment Services, Inc. v. Kleinpeter*, [20-798, p. 4 (La.App. 1 Cir. 4/26/21) (unpublished opinion)]. ["]Such agreements are deemed to be against public policy, except under the limited circumstances delineated by statute.["] *Id.* (citations omitted.) ["]Because non-competition agreements are in derogation of common right, they must be strictly construed against the party seeking their enforcement.["] *Id.* (citations omitted.)

La.R.S. 23:921 provides in pertinent part:

A. (1) Every contract or agreement, or provision thereof, by which anyone is restrained from exercising a lawful profession, trade, or business of any kind, except as provided in this Section, shall be null and void. However, every contract or agreement, or provision thereof, which meets the exceptions as provided in this Section, shall be enforceable.

. . . .

C. Any person . . . may agree with his employer to refrain from carrying on or engaging in a business similar to that of the employer and/or from soliciting customers of the employer within a specified parish or parishes, municipality or municipalities, or parts thereof, so long as the employer carries on a like business therein, not to exceed a period of two years from termination of employment.

["]An agreement limiting competition must strictly comply with the requirements of La.R.S. 23:921.["] *Zanella's Wax Bar, L.L.C. v. Trudy's Wax Bar, L.L.C.*, [19-43, p. 7 (La.App. 1 Cir. 11/7/19), 291

So.3d 693, 698, *writ denied*, 19-1931 (La. 1/28/20), 291 So.3d 1052] (citations omitted).

The Court finds the non-compete provisions of the Agreement ambiguous and unenforceable. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." *La. C.C. Art[.] 2046*. Here, the words of the contract are not clear and explicit. It does not set forth the business KJ's is in. It fails to describe the business despite a separate paragraph, 3.6, with such title. Casey Lane Johnson is not informed in the agreement what business he is not to compete against. Further, paragraph 3.1 is blatantly unclear as to what activity is prohibited. Considering non-compete agreements are disfavored, considering they must be strictly construed, these non-compete provisions are null and void as they do not comport with *La. R.S. 23:921*. The Court did not weigh any intent of the parties with this finding. The Agreement is null and void on its face.

The Louisiana First Circuit Court of Appeal heard a similar matter in *Lafourche Speech & Language Services, Inc. v. Juckett*, [94-1809 (La.App. 1 Cir. 3/3/95), 652 So.2d 679, *writ denied*, 95-850 (La. 5/12/95), 654 So.2d 351]. In *Lafou[r]che*, the non-compete agreement did not define the business with sufficient specificity. *Id.*, 680. The First Circuit wrote:

> The present case illustrates the inherent problem created when the employer's business is not defined in the contract. The non-compete clause merely states that Juckett is prohibited from engaging in a business similar to that of LSLSI. The nature of LSLSI's business is not described anywhere in the contract. However, since LSLSI stated in its petition that it is a "rehabilitation agency providing therapy services in the field of speech pathology, vocational rehabilitation, occupational therapy, physical therapy, and social work services", acceptance of LSLSI's position would prohibit Juckett from employment in any of these areas, although she was hired by LSLSI specifically as a speech therapist.
>
> Given the public policy involved and the requirement of strict construction, we conclude, as did the Fifth Circuit in Daiquiri's III [on Bourbon, Ltd. v. Wandfluh, 608 So.2d 222 (La.App. 5 Cir. 1992), *writ denied*, 610 So.2d 801 (La.1993)] that **in order to be valid a non-compete agreement must specifically define the employer's business. Thus**, the agreement not-to-compete in the present case is void as a matter of law since it contains no definition of LSLSI's business. (Emphasis added.)

[*Id.* at 681.]

See also *Paradigm Health System, L.L.C. v. Faust*, [16-1276, p. 7 (La.App. 1 Cir. 4/12/17), 218 So.3d 1068, 1073] ("Noncompetition agreements are strictly construed in favor of the employee and against the party attempting enforcement. Noncompetition clauses that contain overly broad definitions of the employer's business violate La.R.S. 23:921(C) and are null and void. It is not sufficient to merely prohibit an employee from engaging in a business similar to the employer.")

### **AFFIDAVITS**

The affiants clearly establish the undisputed material facts that Casey Lane Johnson did not "compete" against KJ's following his termination; that he did not exhibit any intent or ill-will toward KJ's; that he in fact encouraged former clients to stay with KJ's; and that he in essence employed himself after the termination carrying with him internally his own set of skills expertise and the like. One cannot take or steal from another that which is within one's self. Thereby, there can not [sic] be theft of trade secrets from a company like KJ's if the individual is the trade secret.

The affiants are fact witnesses who refute allegations contained in the petition proving there are no genuine issues of material fact as to the alleged facts. The affiants further establish that Casey Lane Johnson did not act in an egregious manner toward KJ's.

Considering all the above, the undisputed facts, and the lack of any evidence against Casey Lane Johnson, Plaintiffs are not able to make out claims pertaining to LUTSA, LUTPA, fiduciary breaches, tortious interference, civil conspiracy, or loss of distributorship.

. . . .

The request for attorney's fees and court costs are denied. The court denies these requests based on reasonableness, equity, and lack of bad faith on the part of KJ's. Under the circumstances of losing former customers and the gravy train leaving the station, it is understandable that KJ's would believe Casey Lane Johnson committed some type of breach of the agreement or violated some type of loyalty. Here[,] it is simply unproven as to either.

Considering the foregoing, we affirm the trial court's December 20, 2021 judgment that granted Defendants' motions for summary judgment. Additionally, we hereby deny Plaintiff's motion to file a late reply brief, we find Defendants' joint motion to strike reply brief moot, and we deny Defendants' request for sanctions.

Costs of this appeal are assessed against Plaintiff, KJ's Services, Inc., d/b/a

Landmark Window and Door.

**JUDGMENT AFFIRMED; MOTION TO FILE LATE REPLY BRIEF DENIED; MOTION TO STRIKE REPLY BRIEF MOOT; REQUEST FOR SANCTIONS DENIED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.